ZACHARY TYSON-262251
NOVA LAW GROUP
800 West El Camino Real, Suite 180
Mountain View, CA 94040
Phone: (650)-265-4045
zacharytyson@novalawgroup.com
www.novalawgroup.com

Attorney for Debtor

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In the Matter of: | ) Case No. 11-58342 SLJ ) |
| Patricia Celia Moran | ) Chapter 13 ) |
| | ) **DEBTOR'S RESPONSE TO COURT'S** ) **ORDER TO SHOW CAUSE RE: DISMISSAL** ) ) |
| | ) Hearing Date: 11/9/2011 ) Hearing Time: 1:30PM |
| Debtor | ) Place: 280 South First Street, Room 3099 ) Judge: Stephen L. Johnson |

**DEBTOR'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE RE: DISMISSAL**

INTRODUCTION

Debtor Patricia Celia Moran ("Debtor") hereby responds to the bankruptcy court's order to show cause and presents the following analysis as to why Debtor's secured debts do not exceed the statutory cap imposed by 11 U.S.C. §109(e). Debtor understands the essence of the court's order to show cause to be whether or not the anti-modification provision of 11 U.S.C. §1322(b)(2) could render the alleged full amount of the secured debt of GMAC Mortgage on the debtor's principal residence "secured" within the meaning of 11 U.S.C. §109(e), and consequently, subject debtor's case to possible dismissal under §109(e), as in the *Smith* case cited by the court. Accordingly, this response to the court's order to show cause will focus primarily on the myriad reasons why the undersecured portion of the first mortgage on debtor's residence cannot be counted as "secured debt" for purposes of §109(e), and consequently, why the secured

DEBTOR'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE RE: DISMISSAL

1

portion of the debt for purposes of §109(e) is limited to the value of the collateral, which is $697,000.

## STATEMENT OF FACTS

Debtor Patricia Celia Moran is an entrepreneur and self-made business woman who owns a salon in Willow Glen, which she uses to support herself and her two sons, one of which is mentally disabled, as a single parent. [Sch I; B22C, ln. 9, 16]. Debtor filed the current Chapter 13 case to avoid foreclosure of her home and cure the associated arrearage balance, and to reorganize the debt on an investment property she partially owns in Texas, which produces modest positive cash flow. [Chapter 13 Plan, ln. 2, 4].

Debtor previously obtained a successful discharge on 6/14/2011 in her prior Chapter 7 case filed on 3/4/2011, which is bankruptcy case number 11-52070. [Vol.Pet., p.2].

## PRELIMINARY MATTERS AND JURISDICTION OF COURT

Jurisdiction is vested in the bankruptcy court under 28 U.S.C. §§157 and 1334. Venue is appropriate under 28 U.S.C. §§1408 and 1409. Additionally, Debtor requests the court take judicial notice of its own records in Debtor's current Chapter 13 bankruptcy case and her former Chapter 7 bankruptcy case, with bankruptcy case numbers of 11-58342SLJ and 11-52070ASW respectively, which is appropriate in accordance with Federal Rule of Evidence 201. Fed.R.Evid. 201 (2011).

## ARGUMENT

**A. THE PLAIN LANGUAGE OF 11 U.S.C. §§ 109(e), 506(a), AND 1322(b), IN ACCORDANCE WITH THE U.S. SUPREME COURT'S DECISION IN NOBLEMAN, EXPRESSLY INDICATE THAT THE UNDERSECURED PORTION OF PARTIALLY SECURED DEBT ON THE DEBTOR'S PRINCIPAL RESIDENCE IS NOT SECURED DEBT FOR PURPOSES OF §109(e), NOTWITHSTANDING THE ANTI-MODIFICATION PROVISION OF §1322(b)(2).**

The plain meaning of §§109(e), 506(a), and 1322(b) of the bankruptcy code in connection with the U.S. Supreme Court's decision in *Nobleman v. American Savings* expressly indicate that the undersecured portion of a debtor's first mortgage on her principal residence is not "secured debt" within the meaning of §109(e), notwithstanding the anti-modification provision of §1322(b)(2). 11 U.S.C. §§109(e), 506(a), 1322(b) (2011); *Nobleman v. American Savings Bank*, 508 U.S. 324, 328 (1993).

The bankruptcy code in 11 U.S.C. §109(e) provides that: "Only . . . an individual with regular income . . . that owe[s] . . . secured debts of less than $1,081,400 may be a debtor under Chapter 13 of this title." §109(e). A "debt" is expressly defined as "liability on a claim," and accordingly, no alleged debt can be a "secured debt" within the meaning of §109(e) if it is not also an "allowed secured claim." §101(12), 109(e).

Determination of whether a claim is "secured" or "undersecured" for purposes of §109(e) is made in accordance with §506(a), which provides that an allowed claim secured by a lien on the debtor's property is a secured claim only to the extent of the value of the collateral. §506(a); *In re Scovis*, 249 F.3d 975, 983 (9th Cir. 2001) ("unsecured portion of undersecured debt is

counted as unsecured for §109(e) eligibility purposes"). Furthermore, there is <u>nothing</u> in the language of §506(a) or in the Ninth Circuit's opinion in *Scovis* which limits application of §506(a) in the case of a first mortgage on a principal residence for purposes of §109(e) eligibility. §506(a); See *In re Scovis*, 249 F.3d 975. To the contrary, the plain meaning of §506(a) dictates that an allowed claim cannot be a secured claim within the meaning of §506(a) or a "secured debt" within the meaning of §109(e) to the extent that such claim exceeds the value of the collateral, <u>notwithstanding the fact that such allowed claim is an undersecured claim on the debtor's principal residence, for which there is no statutory exception to the application of §506(a)</u>. §506(a); *United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269, 278 (1929) ("where the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended"—known as the "plain meaning rule"). Had Congress intended to create an exception to the application of §506(a) for allowed claims based on liens attached to a debtor's principal residence, it could easily have done so, but it did not—the plain meaning of §506(a) expressly indicates that the statutory bifurcation analysis applies to such claims on the debtor's principal residence the same as all other allowed claims. *Id*.

Furthermore, the anti-modification clause of 11 U.S.C. §1322(b)(2) does not affect the above analysis, as the express language of §1322(b)(2) only affects what language the debtor may provide for <u>in the debtor's Chapter 13 plan</u>, and does not impact the application of §506(a) to the determination of allowed secured claims for purposes of §109(e) in any regard. §§109(e), 506(a), 1322(b)(2). The bankruptcy code in §1322(b)(2) provides: "the plan may—(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." §1322(b). Accordingly, while §1322(b)(2) limits a debtor's ability to modify the rights of holders of secured claims <u>in the bankruptcy plan</u>, it does

DEBTOR'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE RE: DISMISSAL

4

Case: 11-58342    Doc# 33    Filed: 11/02/11    Entered: 11/02/11 23:34:26    Page 4 of 10

not in any way abrogate or affect the application of §506(a) to allowed secured claims for purposes of an eligibility determination under §109(e). §§109(e), 506(a), 1322(b)(2); *In re Scovis*, 249 F.3d at 983 (mentioning no exception for undersecured debt on a principal residence—express language of holding applies to <u>all</u> undersecured claims for purposes of §109(e)).

Additionally, debtor's assertion that §506(a) applies to bifurcate the undersecured portion from the secured portion for purposes of §109(e) eligibility, even as to allowed claims on the debtor's principal residence and notwithstanding §1322(b)(2), is further supported by the United States Supreme Court's holding in *Nobleman*. §§109(e), 506(a), 1322(b)(2); *Nobleman*, 508 U.S. at 328-29. <u>As the Supreme Court held in *Nobleman*: "Petitioners were correct in looking to §506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim," and that "the bank is still the 'holder' of a 'secured claim,' because petitioners' home retains $23,500 of value as collateral. The portion of the bank's claim that exceeds $23,500 is an 'unsecured claim component' under §506(a) [emphasis added]."</u> *Nobleman*, 508 U.S. at 328-29 (expressly holding that §506(a) applies to allowed claims on a principal residence of the debtor, notwithstanding the fact that §1322(b)(2) prohibits the modification of an allowed claim <u>in the Chapter 13 plan</u> to the extent it is an allowed claim solely secured by the principal residence of the debtor). Furthermore, the language in *Nobleman* that "the portion of the bank's claim that <u>exceeds</u> $23,500 is an <u>unsecured claim component under §506(a)</u> [emphasis added]" expressly indicates that debtor's position as to the application of §506(a) must be correct, as if §1322(b)(2) applied to <u>prohibit</u> the application of §506(a) in cases where §1322(b)(2) applied for purposes other than modification of rights in a bankruptcy plan, then this assertion would directly contradict the Supreme Court's language in *Nobleman* that such "excess" is "an unsecured claim component under §506(a)." *Nobleman*, 508 U.S. at 329. Accordingly, while §1322(b)(2) prohibits the modification or rights of a holder of a secured claim for purposes of a debtor's <u>Chapter 13</u>

DEBTOR'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE RE: DISMISSAL

bankruptcy plan, it does not prohibit the application of §506(a) to bifurcate such undersecured amounts from secured claims for purposes of §109(e), as the Supreme Court expressly held in *Nobleman*, where it deemed such "excess" an "unsecured claim component under §506(a)." *Id*.

Finally, the United States Bankruptcy Court for the District of Columbia recently reviewed a case with facts essentially identical to debtor's case in the present matter and expressly held that: "the antimodification clause of §1322(b)(2) does not extend to determining eligibility for purposes of §109(e), the trustee's argument is without merit." *In re Brammer*, 431 B.R. 522, 523 (Bkrtcy.D.Dist.Col. 2009) (holding expressly that debtors qualified under §109(e) to remain in Chapter 13, because the undersecured portion of the allowed claim on the debtor's principal residence must be treated as unsecured to the extent it exceeds the value of the collateral). The *Brammer* court commented that the Supreme Court was clear in *Nobleman* that to the extent an allowed claim exceeded the value of the collateral, that such claim was an "unsecured claim component" under §506(a), and expressly held that such statement by the Supreme Court "undermines the trustee position and indicates that §506(a) should apply under §109(e)." §109(e), 506(a); *Brammer*, 431 B.R. at 525 (further holding that "Nothing in *Nobleman* stands for the proposition that §1322(b)(2) prevents the operation of §506(a) in other contexts, including eligibility determinations under §109(e)). Additionally, the *Brammer* court expressly found the holding in *In re Smith*, which this court inquired about as part of the order to show cause, as unpersuasive, commenting that the holding in *Smith* was directly contradictory to the Supreme Court's holding in *Nobleman*, which expressly held that §506(a) did apply to allowed claims on a principal residence, notwithstanding that §1322(b)(2) prohibited modification of the rights of a holder of a claim on debtor's primary residence for purposes of the Chapter 13 plan. *Brammer*, 431 B.R. at 525; *In re Smith*, 419 B.R. 826, 832 (Bkrtcy.C.D.Cal. 2009).

Accordingly, debtor argues that the express statutory language of §§ 506(a) and

DEBTOR'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE RE: DISMISSAL

6

Case: 11-58342    Doc# 33    Filed: 11/02/11    Entered: 11/02/11 23:34:26    Page 6 of 10

1322(b)(2), as interpreted by the U.S. Supreme Court in *Nobleman*, indicates that §506(a) applies to bifurcate the undersecured portion from the secured portion of such allowed claim for purposes of §109(e) eligibility under *Scovis*, notwithstanding the antimodification provision of §1322(b)(2) with regard to the bankruptcy plan, and that consequently, debtor has only $697,000 in secured debt on her principal residence, which is the value of the collateral. §§109(e), 506(a), 1322(b)(2); *Nobleman*, 508 U.S. at 329; *Scovis*, 249 F.3d at 983.

**B. THE BRAMMER OPINION IS THE ONLY JUDICIAL OPINION CONSISTENT WITH THE SUPREME COURT'S OPINION IN NOBLEMAN AND THE EXPRESS LANGUAGE OF §§ 506(a) AND 1322(b). THE SMITH OPINION IS ENTIRELY INCONSISTENT WITH NOBLEMAN AND SHOULD BE DISREGARDED AS UNPERSUASIVE.**

Debtor's argument that §506(a) applies to limit the amount of secured debt on a principal residence to the value of the collateral for purposes of §109(e) eligibility is the only argument consistent with the express language of the statutes and *Nobleman*, which holds that any "excess" claims are "unsecured" to the extent that they exceed the value of such collateral, notwithstanding that such claims cannot be modified in the Chapter 13 plan due to §1322(b)(2). §109(e), 506(a), 1322(b)(2); *Nobleman*, 508 U.S. at 329; *Brammer*, 431 B.R. at 525. However, given that the *Smith* decision represents contra authority to debtor's argument and that the court mentioned the decision in its order to show cause, debtor will further demonstrate why the decision in *Smith* was incorrectly decided and the reason the decision in *Brammer* is by far more persuasive.

It should be noted that the decision in *Smith* is not binding authority on this court, and consequently, its holding is only as persuasive as the reasoning supporting its analysis.

With this in mind, the *Smith* court actually provides very little analysis in support of its position that §1322(b) somehow limits the application of §506(a) for eligibility determinations

DEBTOR'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE RE: DISMISSAL

7

Case: 11-58342    Doc# 33    Filed: 11/02/11    Entered: 11/02/11 23:34:26    Page 7 of 10

under §109(e). The court in *Smith* appears to only offer two justifications for its position that §1322(b) restricts the application of §506(a) for purposes of §109(e), which are both unpersuasive as discussed below.

The first justification the *Smith* court presents is to suggest that <u>dicta</u> in the *Soderlund* case <u>in a footnote</u> commenting that the court's decision that a <u>wholly-unsecured</u> claim on a principal residence should be counted as unsecured under *Scovis* <u>might</u> be different if such claim was partially secured on the debtor's principal residence, somehow implies that the *Soderlund* court <u>would</u> have held differently in such context. *Smith*, 419 B.R. at 832. This inference is flawed for a plethora of reasons. First, the language in footnote 5 of the *Soderlund* opinion is entirely dicta, and as such, is entirely non-binding as a matter of law. *In re Soderlund*, 236 B.R. 271, 275 (9th Cir. BAP 1999). Second, the *Soderlund* court expressly stated that it <u>would not attempt to resolve this issue</u>, meaning the issue posed by a security interest in the debtor's principal residence, which the *Smith* court appears to erroneously imply <u>was</u> resolved. *Soderlund*, 236 B.R. at 275 (footnote 5); *Smith*, 419 B.R. at 832 (erroneously implying that the *Soderlund* court might see a problem with applying §506(a) to claims on debtor's principal residence where §1322(b)(2) might apply, even though the *Soderlund* court expressly did <u>not</u> resolve this issue). Third, it is probably more likely that the *Soderlund* court declined to resolve the issue raised in dicta because it had <u>not</u> yet decided whether such a fact pattern would produce the different outcome suggested in *Smith*, as if the *Soderlund* court had decided that a different outcome would apply, there would be no reason not to expressly indicate a §1322(b)(2) exception to the application of §506(a) in the context of §109(e). *Id*. Accordingly, the *Soderlund* "footnote" does not adequately support the analysis in *Smith*. *Id.*

The second justification the *Smith* court presents as a reason to restrict the application of §506(a) when §1322(b)(2) would apply to plan confirmation, is that "in order to avoid treating a

DEBTOR'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE RE: DISMISSAL

8

Case: 11-58342    Doc# 33    Filed: 11/02/11    Entered: 11/02/11 23:34:26    Page 8 of 10

lien one way for confirmation and another for eligibility, and to treat the partially secured senior trust deeds consistent with *Nobelman* and *Zimmer*, any lien which is partially secured on debtor's primary residence will be treated as a secured debt for §109(e) purposes as well." *Smith*, 419 B.R. at 832. The problem with the *Smith* court's reasoning is that "treating a lien one way for confirmation and another for eligibility" is exactly what is dictated by the express language of §§506(a), 1322(b)(2), and the Supreme Court's decision in *Nobleman*. §§506(a), 1322(b)(2); *Nobleman*, 508 U.S. at 328-29. As discussed previously, the plain meaning of §1322(b)(2) only applies to a modification of the rights of a secured claim on the debtor's principal residence for purposes of the plan, and not for any other purpose. §1322(b)(2). Likewise, there is no language in §506(a) whatsoever which limits the application of such statute to claims against real property that is not a principal residence of the debtor, even though §1322(b)(2) is clear evidence that Congress knows how to limit such application of the statute if it had intended to do so. §§506(a), 1322(b)(2). And finally, the most compelling reason that the decision in *Smith* must be incorrect is that it directly contradicts the U.S. Supreme Court's holding in *Nobleman*, which expressly held that: "The portion of the bank's claim that exceeds $23,500 is an 'unsecured claim component' under §506(a) [emphasis added]." *Nobleman*, 508 U.S. at 329. Given that the court in *Nobleman* was itself analyzing a partially-secured claim on a debtor's principal residence, and that it expressly found the undersecured portion of that claim to be unsecured for purposes of §506(a), the assertion in *Smith* that such undersecured portion of the same type of claim as in *Nobleman* is fully secured is entirely contradictory with the Supreme Court's holding, and therefore, necessarily erroneous. *Nobleman*, 508 U.S. at 329 (Supreme Court expressly held that §506(a) applied to make undersecured portion of claim unsecured—the Court simply held that the plan still was prohibited from modifying the claim under §1322(b)(2), but did not prohibit the application of §506(a) for any other purpose); *Smith*, 419 B.R. at 832 (statement that "any lien

DEBTOR'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE RE: DISMISSAL

9

which is partially secured on debtor's primary residence will be treated as secured debt for §109(e)" is entirely inconsistent with *Nobleman*, which holds that such undersecured debt is unsecured for purposes of §506(a), and contradicts *Scovis*, which holds that claims which are unsecured under §506(a) must be treated as unsecured for purposes of §109(e)).

Accordingly, debtor asserts that the interpretation given §§109(e), 506(a), and 1322(b)(2) by the *Smith* court prohibiting the application of §506(a) to §109(e) eligibility determinations is both flawed and directly contradictory to binding precedent in the Ninth Circuit, and consequently, must be rejected in favor of the more reasoned analysis in *Brammer*.

## CONCLUSION

The Supreme Court's decision in *Nobleman* mandates that the undersecured portion of the first mortgage on a debtor's principal residence cannot constitute an allowed secured claim within the meaning of §506(a) to the extent that it exceeds the value of the collateral, which is $697,000. Correspondingly, a claim cannot constitute a "secured debt" within the meaning of §109(e) if it is not an allowed secured claim, which is determined at the time of filing after application of §506(a) under the Ninth Circuit's opinion in *Scovis*. Accordingly, debtor's secured debt on her principal residence for purposes of §109(e) is exactly $697,000, which is the value of the collateral as listed in debtor's schedules.

Respectfully Submitted,

Dated: 11/2/2011

/s/ Zachary Tyson, esq.
Zachary Tyson, esq.
Nova Law Group
800 West El Camino Real, Suite 180
Mountain View, CA 94040
(650)-265-4045
zacharytyson@novalawgroup.com

Attorney for Debtor Patricia Celia Moran

DEBTOR'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE RE: DISMISSAL

10

Case: 11-58342    Doc# 33    Filed: 11/02/11    Entered: 11/02/11 23:34:26    Page 10 of 10